**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| DAISY JEAN MOLES, | ) | CASE NO. 1:25-cv-01008-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| SUPERINTENDENT ANGELA SMITH, et | ) | |
| al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## I.     Introduction

On May 16, 2025, Plaintiff Daisy Jean Moles ("Moles"), filed a Complaint, asserting constitutional claims under 42 U.S.C. § 1983 against Defendants Shawn Douglas, Michelle Hayes, Brian Horvath, Jean Sency, Angela Smith, Jeff Thompson, and Jack Whaley (respectively by last name, collectively, "Individual Defendants") (ECF Doc. 1), which was later amended to include Defendant Madison Local School District Board of Education ("the Board"), and added three more claims, (ECF Doc. 12), to which all Defendants answered (ECF Doc. 17). On June 13, 2025, the case was referred to me for pretrial supervision, including, among other instruction, filing a report and recommendation for case-dispositive motions. (ECF Doc. 11).

Defendants have since filed a Rule 12(c) Motion for Judgment on the Pleadings, requesting the matter be dismissed in its entirety. (ECF Doc. 18). As explained below, the Amended Complaint fails to allege facts upon which relief might be granted. Furthermore, the facts alleged do not warrant that Moles be permitted additional amendments to her Complaint or

1

otherwise attempt to revive her claims. I therefore recommend the District Court grant Defendants' motion and dismiss the case with prejudice.

## II.      Procedural History

Moles' original Complaint filed on May 16, 2025, named Individual Defendants Douglas, Hayes, Horvath, Sency, Smith, Thompson, and Whaley, with respect to their roles at Madison Public Schools. (ECF Doc. 1, pp. 1-3). In the addendum to her Complaint, Moles brought suit against each in their official and individual capacities. (ECF Doc. 1-1, pp. 2-3). Moles also named the Madison Local School District Board of Education in the caption, but did not provide a summons to the Clerk for mailing. (ECF Doc. 1-1, p. 7; non-document entry of June 16, 2025 (ordering Plaintiff to perfect service against the Board if she wished to proceed against it)). In that Complaint, Moles brought the following claims for relief: First Amendment Retaliation (Count I); and Equal Protection Violation, with a Fourteenth Amendment "Class of One" Theory (Count II). (ECF Doc. 1-1, pp. 4-5).

On July 2, 2025, within the time permitted for filing as a matter of course under Federal Rule of Civil Procedure 15(a)(1), Moles filed an amended complaint against the same individual Defendants, and adding the Board as a defendant. (ECF Doc. 12). In the operative Amended Complaint, Moles raises the following claims for relief: Count I – First Amendment Retaliation *against all individual Defendants*, Count II – Equal Protection Violation *against all individual Defendants*, Count III – Procedural Due Process Violation *against all individual Defendants*, Count IV – Civil Rights Conspiracy *against all individual Defendants*, and Count V – Monell Liability *against the Board*. (ECF Doc. 12, Am. Compl., ¶¶ 17-33).

On September 4, 2025, Defendants filed a Motion for Judgment on the Pleadings (ECF Doc. 18), and a Motion to Stay Discovery (ECF Doc. 19) until the Court resolves the dispositive

motion. Despite a late-filed opposition by Moles, I granted Defendants' motion and stayed discovery. (Non-document entries of Sept. 24 *and* Sept. 29, 2025; *see also* ECF Docs. 20, 21, 22, 23).

Thereafter, Moles filed opposition to the Motion for Judgment on the Pleadings on October 15, 2025 (ECF Doc. 24), Defendants replied on October 29, 2025 (ECF Doc. 26), and Moles was granted leave to file a sur-reply (ECF Doc. 27) on November 3, 2025. The matter is now fully ripe.

## III.    Factual Background

Moles is a former resident of Lake County, Ohio; she is a parent of a student who was previously enrolled in Madison Local School District and was actively engaged at the school. (ECF Doc. 12, p. 1, Am. Compl., Introduction, ¶ 1). Defendant Smith was the Superintendent of that school district at the time of the allegations in the Complaint; Defendant Whaley is the Principal of Madison Middle School, and Defendants Douglas, Hayes, Horvath, Thompson, and Sency were Madison School Board members. (ECF Doc. 17, Am. Ans., ¶¶ 4-6). The Board is a public body organized under Ohio law. (*Id.* ¶ 7).

Moles states that between 2021 and 2023, she was an active parent at Madison Middle School, serving as president of the Parents and Kids ("PAK") Group at Madison Middle School. (ECF Doc. 12, Am. Compl., ¶ 8). She organized events and fundraising, and attended school board meetings. (*Id.*). Moles alleges that, starting in 2021, she voiced concerns about the district's transparency, administrative accountability, and student welfare, both at school board meetings and via email correspondence. (*Id.* ¶ 9). She also submitted public records requests under Ohio Revised Code § 149.43 regarding Board policy, financial oversight, and school practices. (*Id.* ¶ 10; ECF Doc. 17, Am. Ans., ¶ 12). She alleges she engaged in lawful, civil, and

cooperative conduct and her behavior would not warrant exclusion from school events or public meetings. (ECF Doc. 12, Am. Compl., ¶ 12).

In 2022, Moles was removed from leadership in the PAK group. (*Id.* ¶ 13a). She alleges this was done through Defendants' control. (*Id.* ¶¶ 13a, 13f). Defendants maintain that the PAK group is independent of their control and admit only that she "was removed" from leadership. (*Id.*; ECF Doc. 17, Am. Ans., ¶¶ 16, 21).

Moles alleges, without specificity, that Defendants reported her to local police "under false pretenses of financial misconduct." (ECF Doc. 12, Am. Compl., ¶ 13b). She states no audit, charges, or formal complaint followed. (*Id.*). Defendants respond that "the police were involved with" claims regarding Moles' handling of school funding. (ECF Doc. 17, Am. Ans., ¶ 17).

Moles states that she submitted public records requests in 2024 and 2025. (ECF Doc. 12, Am. Compl., ¶ 13c). Defendants responded to these requests but had no responsive materials to provide, stating that records that Moles believed to exist did not exist, or that a settlement agreement prevented disclosure; Moles characterizes these responses as denials. (*Id.*). Defendants admit that they responded to the public records requests as violative of a settlement agreement and/or were legally insufficient. (ECF Doc. 17, Am. Ans., ¶ 18).

Moles also states she and her adult daughter (who is not a plaintiff in this suit) were required to undergo and pay for a background check in order to chaperone a school dance. (ECF Doc. 12, Am. Compl., ¶ 13d). Moles alleges that other parents were permitted to chaperone without the same background check process. (*Id.*). In 2023, Moles alleges that the Board announced a new policy that only staff would be permitted to chaperone school events. (*Id.*). Despite communication with the superintendent regarding the policy, Moles was not permitted to chaperone a school dance. (*Id.*). Moles' daughters attended the dance and were placed at a table

monitored by the assistant superintendent (who is not a defendant). (*Id.*). Defendants admit that it was school policy to require Moles and her adult daughter submit to and pay for a background check to chaperone a school dance. (ECF Doc. 17, Am. Ans., ¶ 19). They also admit that the Board revised policies regarding chaperones. (*Id.*).

Moles states that, during a public school board meeting in 2022, she exceeded her speaking time, and Defendants cut her microphone, left the stage, and summoned police. (ECF Doc. 12, Am. Compl., ¶ 13e). She states other speakers were permitted reasonable extensions for speaking time. (*Id.*). She also states she was "falsely labeled a trespasser and the meeting was halted until she left." (*Id.*). Defendants admit that "police were called in response to [Moles] trespassing during a Board meeting." (ECF Doc. 17, Am. Ans., ¶ 20). They also state that Moles "violated the rules in place for Board meetings." (*Id.*).

Moles states she was not notified of her alleged wrongdoing or offered a forum to contest the above actions. (ECF Doc. 12, Am. Compl., ¶ 15).[1]

## IV.    Standard of Review

Once the pleadings stage is complete, but early enough not to delay trial, a party may seek judgment on the pleadings. Fed. R. Civ. P. 12(c); *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). The standard for considering a Rule 12(c) motion for judgment on the pleadings is the same as that of a Rule 12(b)(6) motion to dismiss. *Moderwell*, 997 F.3d at 659.

When deciding a Rule 12(c) motion, a court considers all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to

---

[1] The remaining allegations in Moles' Amended Complaint appear to be conclusory restatements of her legal claims. (*See, e.g.*, ECF Doc. 12, Am. Compl., ¶¶ 17-33). As such, I do not recount them here as part of the factual background in this case. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

the motion for judgment on the pleadings that are referred to in the complaint and are central to

the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and

(4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys*

*& Couns. at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted). The

matters a court may consider are limited to the pleadings phase and do not extend into discovery.

*See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (describing

conversion to summary judgment if the court considers matters outside the pleadings).

     "For purposes of a motion for judgment on the pleadings, all well-pleaded material

allegations of the pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless clearly entitled to judgment." *Moderwell*, 997

F.3d at 659 (internal quotations and marks omitted). To succeed, the moving party must show

that, even if accepted as true, "no material issue of fact exists and the party making the motion is

entitled to judgment as a matter of law." *Id.* On the other hand, to survive a motion for judgment

on the pleadings, as with the 12(b)(6) standard, a complaint must plead facts sufficient to state a

claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Pleadings by pro se litigants are liberally construed and held to less stringent standards than

formal pleadings by lawyers. *El Bey v. Roop*, 500 F.3d 407, 413 (6th Cir. 2008); *see also*

*Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985). But even so, liberal construction of pro se

pleadings is not without its limits. *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

Liberal construction does not require this Court to conjure allegations on a plaintiff's behalf, and

pro se pleadings must provide notice to the opposing party of the relief sought. *Id.*

     At this stage in the pleadings, a material issue of fact exists when the allegations set out

more than a speculative possibility that the opposing party is entitled to the relief sought.

*Twombly*, 550 U.S. at 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'", quoting *id*. at 678). Thus, the complaint should indicate a "statement of the circumstances, occurrences, and events giving rise to the claim[.]" *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) citing *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995), and Fed. R. Civ. P. 8. Nonetheless, courts need not accept a legal conclusion as true when dressed as a factual allegation or make unwarranted factual inferences. *Jackson v. Prof'l Radiology, Inc.*, 864 F.3d 463, 466 (6th Cir. 2017); *see also Twombly*, 550 U.S. at 555-56.

In application, this is not a high bar for the opposing party to cross; it means simply that they present "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. If so, then the case may proceed even if uncovering actual proof of the facts alleged is improbable and recovery unlikely. *Id.*

## V.    Discussion

All Defendants jointly request that this Court grant their motion for judgment on the pleadings and dismiss Moles' case in its entirety, with prejudice. (ECF Doc. 18). They bring multiple arguments in support. (*See id.*; *see also* ECF Doc. 26). Despite prior amendment to her Complaint (*compare* ECF Doc. 1, 1-1 *with* ECF Doc. 12), and fully briefed opposition to Defendants' motion (ECF Doc. 24), including a sur-reply (ECF Doc. 27), it appears Moles has not alleged sufficient facts for her case to succeed.

I now consider each of Defendants' arguments in turn.

A.      **The Amended Complaint fails to state a claim on which relief can be granted.**

The Individual Defendants argue that Counts I – IV fail to state a claim on which relief can be granted. (ECF Doc. 18, pp. 15-24). I will address each Count separately below.

For all Counts, a pleading does not require a technical form; it merely must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); 8(d)(1). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Pro se pleadings, like Moles', are construed broadly. *El Bey*, 500 F.3d at 413. To be well-pled, a complaint need not be detailed, nor does it require a judge to believe that the factual basis of the claim is probable, should the case proceed to discovery. *Twombly*, 550 U.S. at 555-56. However, the plaintiff must set out a statement of facts based on more than mere speculation. *Id.* It is not enough to rely only on conclusory allegations suggestive of illegal conduct without providing further factual enhancement to support the claim – particularly where, as here, allegations of "parallel conduct . . . could just as well be independent action." *Id.* at 557 (describing that a court need not accept terms such as "conspiracy" or even "agreement" as a sufficient basis for a complaint without other facts in support of the claim).

Moreover, the Court must construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e). It must also consider the case as a whole, including available methods to weed out groundless claims through careful case management, and the expense of continued litigation. *See, e.g.*, *Twombly*, 550 U.S. at 557-60. As discussed in each section below, Counts I– IV of Moles'

Amended Complaint fail for lack of specificity and directness under Rule 8; she has not alleged facts to support any claim on which relief might be granted.

### 1.    Count I – First Amendment Retaliation

Each of Moles' claims appear premised on the idea that Defendants have conspired to retaliate against her for conduct protected by the First Amendment. (*See generally* Am. Compl.). In support of these claims, she states simply that she "engaged in protected speech and petition activity under the First Amendment" and that "Defendants retaliated against Plaintiff by excluding her from leadership roles, denying access to school functions, involving police, and obstructing her records requests." (ECF Doc. 12, Am. Compl., ¶¶ 17-18).

To prevail on a First Amendment retaliation claim, Moles must show that:

(1) she engaged in constitutionally protected speech,
(2) the Individual Defendants took adverse actions against her that caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing that activity, and
(3) the Individual Defendants' actions were motivated, at least in part, by the exercise of her constitutional rights.

*McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 696, 217 L. Ed. 2d 390 (2024).

The First Amendment's free speech guarantee protects "almost all speech" from government interference, especially when the "censorship is based on the views expressed within the speech." *Id.* (internal quotations and marks omitted). The "'right to criticize public officials' is safely within that protected speech zone . . . and is typically off limits from government regulation." *Id.*, quoting *Jenkins v. Rock Hill Loc. Sch. Dist.*, 783 F.3d 585, 599 (6th Cir. 2008). It extends to protect the contents of a parent's speech about their child to school employees, unless that speech is obscene, or is part of a crime, incitement, or fraud. *McElheney*, 81 F.4th at 557; *see also Alvarez*, 567 U.S. 709, 717 (2012). It is unnecessary for a parent to speak on a

9

matter of public concern for their speech to be protected. *Jenkins*, 513 F.3d 580, 586-88 (6th Cir. 2008) (distinguishing the *Pickering* and *Connick* "public concern" test inapplicable to parental speech in the public school context, because that test was designed to balance government employee speech on matters of public concern and the interests of the state as an employer).

The First Amendment also protects a citizen's right to make a public-records request, but it does not compel disclosure of the underlying records. *Spithaler v. Smith,* 803 F. App'x 826, 829 (6th Cir. 2020). "'[N]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.'" *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016), quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14-15 (1978).

Thus, at the pleadings stage and construing in her favor, the Court may presume that Moles' alleged speech and her ability to make public records request is protected by the First Amendment. The content of her speech is not mentioned in the pleadings, and without an allegation that the speech was obscene, defamatory, or fighting words, it generally falls within the protections of the First Amendment. *See Jenkins*, 513 F.3d at 588, citing *R.A.V. v. St. Paul*, 505 U.S. 377, 382-83 (1992).

But that is not the end of the analysis. Even if the speech itself receives broad protection from the First Amendment, Moles must still meet the second and third elements for her First Amendment Retaliation claim to survive. *Jenkins*, 513 F.3d at 588 (describing that the first prong of a retaliation claim is balanced against the other two, to prevent disputes between parents and school officials from becoming First Amendment lawsuits). Thus, Moles must yet plead sufficient facts to show that the Individual Defendants took adverse actions against her and caused injury that would likely chill a person of ordinary firmness from continuing that activity,

and the Individual Defendants' actions were motivated by the exercise of her constitutional rights. *McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 696, 217 L. Ed. 2d 390 (2024). In so doing, "a plaintiff must prove a causal connection between the protected conduct and the adverse action." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). "Bare allegations of malice do not suffice to establish a constitutional claim." *Id.*, quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (internal marks omitted).

This is where Moles has failed to plead sufficient facts to show either element. In the Protected Activities portion of her factual allegations, she provides the conclusory statements that her "speech and records requests were protected activity under the First Amendment" and that "[a]t all relevant times [Moles'] conduct remained lawful, civil, and cooperative. She engaged in no behavior warranting exclusion from school events of public meetings." (ECF Doc. 12, Am. Compl., ¶¶ 11, 12).

Moles continues, alleging that "Defendants engaged in a coordinated campaign of retaliation" in response to her speech activity. (*Id.* ¶ 13). She names the alleged retaliatory acts as "exclusion from PAK leadership," "false allegations & police involvement," "denial of public records," arbitrary chaperone exclusion," "police involvement at public meeting," "contradictory PAK oversight claims," and "retroactive policy changes." (*Id.* ¶¶ 13a-g). Of these allegations, none are directed at any Individual Defendant; all name only "Defendants" broadly. (*Id.*). Even if further factual development could uncover which Defendant acted, her supporting allegations of fact lack the type of directness expected in an Amended Complaint – they provide vague reference to "Defendants" generally without identifying which Individual Defendant may have acted, (¶¶ 13a-g); include permissible conduct (*e.g.*, policy requirements for chaperones, ¶¶ 13d, g); and include conduct seemingly outside of Defendants' control (*i.e.*, no explanation is given

for Defendants' control over a parent's organization, ¶¶ 13a, b, f). In addition, Moles makes no allegations that she was ever prevented from submitting a public records request. (*Id.* ¶ 13c). These allegations do not demonstrate an adverse act by the Individual Defendants. Moles fails as to the second element of her First Amendment Retaliation claim.

And finally, Moles fails to connect the exercise of her free speech and any action by the Individual Defendants. In general, the allegations in the Amended Complaint rely only on legal conclusions to support the claims. (*Id.* at Introduction,  ¶¶ 11-12, 14-16). But even those with more factual content still fail to demonstrate speech-related retaliation. For example, Moles alleges that "Defendants reported Plaintiff to local police under false pretenses of financial misconduct. No audit, charges, or formal complaints followed." (*Id.* ¶ 13b). Certainly, a false police report may be of the type of conduct that would chill the speech of a person of ordinary firmness. But Moles provides no causal link to her protected speech. She simply continues that it "was an act of intimidation and reputational harm." (*Id.*). This allegation thus is a bare allegation of malice and does not support her constitutional claim. *Vereecke*, 609 F.3d at 400. Similarly, when police were called to a public school board meeting in 2022, Moles alleges this was because she "briefly exceeded her speaking time." (ECF Doc. 12, Am. Compl. ¶ 13e). Moles was permitted to speak during the public meeting, and therefore, her free speech right was protected by the Board. Limiting the time of her speech without relation to the content does not show that any Individual Defendant committed an unconstitutional act or that it was motivated by Moles' exercise of her First Amendment rights. Public board meetings are permitted content-neutral controls to ensure orderly meetings take place and allow all attendees to exercise their freedom of speech. It is for Moles to allege facts to show the causal link from her speech itself to an

Individual Defendant's retaliatory action. But she has failed to make that link. (*See id.*). Thus, the third prong – speech-based animus – fails.

This First Amendment Retaliation claim is foundational to the other claims within Moles' Amended Complaint. When cutting away the legal conclusions to only the facts on which those conclusions are premised, Moles has provided little to link her exercise of speech to any retaliatory actions by the Individual Defendants. And certainly, pro se pleadings need not be detailed – but they must be direct, and on directness, Moles has failed to put any Defendant on sufficient notice of their allegedly unconstitutional acts. Even taking the allegations in the best light, it is not clear which Defendant acted, when the conduct occurred, whether it was an independent action by an individual Defendant, or how Defendants are alleged to have conspired against her. (*See generally* Am. Compl.).

I am also mindful that Moles' case is in the pleadings stage, and that discovery has been stayed until Defendants' Motion for Judgment on the Pleadings is decided. Nonetheless, Moles does not adorn her Amended Complaint with the type of facts that presumably are within her control. For example, even though Moles alleges she is being discriminated against for her viewpoint, she does not provide what viewpoint she holds that has caused discriminatory animus by any Defendant. She does not provide the contents of the records requests submitted. Nor does she provide the subject matter underlying her protected speech, or general allegations of which Board meeting she attended when she was not permitted to overrun her allotted time. Certainly, she is not expected to remember or recite full details at this stage of the pleadings. But I am left troubled that, for a First Amendment Retaliation claim, Moles does not provide any details of her protected speech, and names as retaliation certain activities by Defendants that are not, in themselves, unlawful.

Thus, even under the leniency afforded her as the pro se, nonmoving party, Moles'

Amended Complaint fails to state a claim as to Count I – First Amendment Retaliation, and I

recommend granting Defendants' motion and dismissing this Count.

### 2. Count II – Equal Protection Violation

In Count II, Moles argues that she "was treated differently than similarly situated parents

and community members," that this "differential treatment lacked a rational basis and was

motivated by viewpoint discrimination and personal animus" resulting in "constitutional injury

and damages." (ECF Doc. 12, Am. Compl., ¶¶ 22-24). In her opposition brief, Moles clarifies

that she "was cut off and threatened with police for slightly exceeding her time limit, while in

prior meetings other speakers were permitted to exceed their time without consequence." (ECF

Doc. 24, p. 4). She further alleges that unnamed board members discussed her "'inappropriate'

records requests and their alleged cost to the district" and repeatedly denied her requests, unlike

other community members. (*Id.*).

Defendants argue that the allegations in Moles' Amended Complaint are conclusory and

do not provide any specific examples of a similarly situated parent or community member to

support her Equal Protection claim. (ECF Doc. 18, pp. 20-21).

The Fourteenth Amendment provides: "No State shall make or enforce any law which

shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const..

amend. XIV, § 1. To establish an Equal Protection violation, a plaintiff must show that a

government defendant's actions resulted in disparate treatment between similarly situated

individuals that either burdens a fundamental right, targets a suspect class, or has no rational

basis. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) *and Ctr. for Bio-*

*Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). If disparate treatment is

shown, and if that treatment "invades a 'fundamental right' such as speech" then "the rigorous 'strict scrutiny' standard governs, whereby such laws will be sustained only if they are suitably tailored to serve a compelling state interest." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 621 (6th Cir. 1997), quoting *id.* at 440.

"The Equal Protection Clause forbids only intentional discrimination." *Horner v. Kentucky High Sch. Athletic Ass'n,* 43 F.3d 265, 276 (6th Cir. 1994), citing *Washington v. Davis,* 426 U.S. 229 (1976). Thus, when a plaintiff asserts an equal protection challenge to a facially neutral rule, they must show the rule was made "*because of*, not merely in spite of, its adverse impact on persons in the plaintiff's class." *Horner*, 43 F.3d at 276. Disparate impact without evidence of discriminatory intent does not violate the Equal Protection Clause. *See*, *e.g.*, *Washington v. Davis*, 426 U.S. 229, 245-46 (1976); *see also Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir. 2022).

And the Sixth Circuit has held that the "threshold element of an equal protection claim is disparate treatment" of similarly situated individuals. *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379, quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006). "To be 'similarly situated' for purposes of an equal-protection claim, the plaintiff and the comparator must be alike 'in all relevant respects.'" *Reform Am.*, 37 F.4th at 1152 (6th Cir. 2022), quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Equal protection claims may also be brought by a "class of one" where a plaintiff alleges they have been *intentionally* treated differently from others similarly situated without rational basis. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court has explained that this is because the purpose of

the Equal Protection Clause is to protect every person against "intentional and arbitrary discrimination." *Id.* (internal quotation and marks omitted).

Even where a fundamental right is implicated in the equal protection claim, a plaintiff must plead sufficient facts to cross the threshold showing of disparate treatment. *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379. Conclusory allegations of intentional discrimination without additional supporting detail does not show that the pleader is entitled to relief on their equal protection claim. *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009), citing *Iqbal*, 556 U.S. 662 (2009). And a court need not proceed in its equal protection analysis if a plaintiff fails to plead sufficient facts. *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (upholding district court dismissal for failing to state a claim where "the Amended Complaint fails to make a plausible allegation that similarly situated organizations and individuals . . . have not been subject to the same alleged treatment by Defendants.").

Here, Moles fails to allege sufficient facts to meet a threshold showing of disparate treatment based on viewpoint. As discussed in the First Amendment Retaliation claim, above, many of Moles' factual allegations are conclusory legal claims wrapped in the guise of fact. (*See, e.g.*, ECF Doc. 12, Am. Compl., ¶¶ 11-13, 13c, 14-15). A court need not accept such allegations as true.

Moreover, the claims of disparate treatment do not cross the plausibility threshold required at the pleadings stage. Moles, in her Amended Complaint, makes broad allegations that Defendants engaged in unconstitutional retaliatory behavior. She states in her opposition brief that she was "singled out for stricter time-limit enforcement, more burdensome volunteer requirements, and repeated records-request denials" and that this treatment was "selective" and "driven by hostility to her advocacy." (ECF Doc. 24, p. 5). But other than stating these broad

conclusions, Moles does not show intentional differential treatment, applied only to her, to ground her 'class of one' equal protection claim.

For example, Moles challenges two chaperone policy changes, made in 2022 and 2023, respectively. (ECF Doc. 12, Am. Compl., ¶ 13d). She states that in 2022, she (and her adult daughter) were required to undergo background checks to chaperone, but other parents were permitted to chaperone without undergoing background checks. (*Id.*). In 2023, the policy changed to only staff acting as chaperones, and no parents were permitted to chaperone, regardless of background checks. (*Id.*). Even assuming the Defendants may have imperfectly applied the background check rule, Moles points to another adult – her daughter – who also had the background check policy applied to her. (*Id.*). And Moles makes no allegations of disparate treatment with respect to the staff-only chaperone policy in 2023. (*Id.*). Thus, with respect to the chaperone policy changes, Moles does not plead sufficient facts to show disparate treatment.

Next, regarding her public records request denials, Moles likewise does not allege facts to show disparate treatment. She states only that the "denials were selectively enforced, lacked transparency, and appeared calculated to chill [her] lawful oversight activities." (*Id.* ¶ 13c). Even though Moles alleges selective enforcement of public records requests, it does not appear that a denial occurred. (*See generally*, ECF Doc. 12, Am. Compl.). Defendants responded to her public records requests with an explanation as to why those records were unavailable. (ECF Doc. 12, Am. Compl., ¶ 13c; ECF Doc. 17, Am. Ans., ¶ 18). Defendants did not prevent her from submitting her public records requests, nor did they deny her a response. (*Id.*). And not having

responsive records available to turn over does not result in selective enforcement of a public records request by Defendants. Thus, Moles again fails to plausibly allege disparate treatment.

Finally, the time-limitation on public meetings portion of her Equal Protection claim also fails to plausibly allege sufficient facts in support. As both parties acknowledge, the Board has a rule in place to limit time for public comment during meetings. (*See id.* ¶ 13e; ECF Doc. 14, Am. Ans., ¶ 20). Both parties agree that Moles violated this rule during the meeting in question. (*Id.*). Moles states that she and other speakers had "briefly" exceeded speaking time, but that she was subject to "stricter" enforcement of that rule. (ECF Doc. 12, Am. Compl., ¶ 13e; ECF Doc. 24, p. 5). But Moles does not allege that she was the only person subject to the time-limitation rule, or that others who violated the rule were permitted to speak at length where she was not. (*See id.*). It does not follow that stricter enforcement of a rule in one instance results in an equal protection claim.

Thus, Count II – Equal Protection Violation also fails to state a claim on which relief might be granted. I again recommend granting Defendants' motion and dismissing this count.

### 3. Count III – Due Process Violation

In Count III – Due Process Violation, Moles claims the Individual Defendants excluded her from civic participation, harmed her liberty interests in her reputation and public engagement, and she was not given notice or hearing to defend her rights or clear her name. (ECF Doc. 12, Am. Compl., ¶¶ 25-27).

Defendants state that this claim is insufficiently pled, but they presume her primary constitutional claim relates to her removal from the PAK group. (ECF Doc. 18, p. 21). Defendants state that the Amended Complaint is unclear, but, presuming that is the basis for her claim, Moles cannot support any element of her due process claim. (*Id.* at pp. 21-23). Moreover,

Defendants state that they are not obligated to provide Moles with a "name clearing hearing" because she is not a public employee, but, even presuming she is entitled to a "name clearing hearing" she has not alleged that she ever requested one and was denied. (*Id.* at pp. 22-23).

Moles later clarifies in her opposition brief that "[b]y branding [her] a trespasser, instigating police involvement, and dissolving PAK without notice, Defendants inflicted reputational and tangible harms without procedural safeguards" sufficient to satisfy the "stigma-plus framework." (ECF Doc. 24, p. 5, citing to *Quinn*, 293 F.3d at 320).

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const.. amend XIV, § 1. In cases where the plaintiff alleges reputational harm, the "stigma-plus test" applies. *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007). This is because the stigma of reputational harm alone does not amount to a protected liberty or property right under the Fourteenth Amendment. *Id.*, *see also Paul v. Davis*, 424 U.S. 693, 712 (1976). Therefore, to state a colorable claim of procedural due process violation, the plaintiff must allege an injury to their reputation (the stigma), coupled with the deprivation of a tangible liberty interest or property right (the plus) without adequate process. *E.g.*, *Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 785 (6th Cir. 2016).

Reading only the allegations of the Amended Complaint, as is required at this stage of the proceedings, I agree that this claim is inartfully pled and fails to meet Rule 8's pleadings standards. In the Amended Complaint, Moles argues that she was excluded from "civic participation without notice or hearing." (ECF Doc. 12, Am. Compl., ¶ 25). However, as discussed in Sections 1 and 2 above, Moles does not provide a factual basis for this claim – she does not allege facts that show an *exclusion* from civic participation, rather, she appears

frustrated by certain *limitations* placed on her desired means of civic participation, such as full disclosure of all public records requests, chaperoning school events, or permission to speak at public meetings without time limits imposed. These limitations do not amount to an exclusion, and do not show that she was deprived of any liberty or property interest protected by the Fourteenth Amendment. Some of the factual allegations – such as false allegations of financial misconduct, ¶ 13b, or summoning police during a public meeting under false pretenses, ¶ 13e – might lead to some reputational harm. But reputational harm alone does not suffice to establish a due process claim. *Paul*, 424 U.S. at 712. Rather, Moles' "interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law." *Id.*

Thus, Moles has failed to allege sufficient facts to meet the "stigma-plus" standard for her procedural due process claim to survive. A due process claim based on reputational harm alone does not stand. I therefore recommend that the District Court grant Defendants' Motion and dismiss this claim.

### 4.    Count IV – Civil Rights Conspiracy

Moles alleges that "Defendants acted in concert and agreement" to violate her constitutional rights, "including coordinated exclusions, false allegations, and weaponization of school procedures." (*Id.*, ¶¶ 28-29). Defendants argue this claim should be dismissed based on the intracorporate conspiracy doctrine, in which a Section 1983 conspiracy claim is barred if the alleged conspiracy is by and between the employees or agents of the same school board. (ECF Doc. 18, pp. 23-24, citing *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019)).

Defendants state that this claim also fails because the conclusory allegations of the Amended Complaint fail to satisfy pleading standards. (ECF Doc. 18, p. 24).

The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson*, 925 F.3d at 817. The Sixth Circuit has held that this doctrine applies in Section 1983 suits, and bars conspiracy claims where two or more members of the same entity are alleged to have conspired together to deprive a plaintiff of their rights. *Id.* This is because local government entities are considered 'persons' for purposes of Section 1983, *see Monell*, 436 U.S. at 690, and each member of that entity is treated as part of that same 'person,' not as individually separate 'persons.' *Jackson*, 925 F.3d at 818. And, in the public school context, this means that school district superintendents, school administrators, and other employees are considered to be the same collective entity, *i.e.*, employees or agents of the Board of Education. *Id.*, *see also Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (applying same in Section 1985 context). Thus, without two separate legal persons to form a conspiracy, the claim fails. *Id.*

Here, all Individual Defendants are considered employees or agents of the same legal entity: the Madison Local School District Board of Education. Because they are all the same legal entity, there is no conspiracy claim available under Section 1983. Thus, Count IV – Civil Rights Conspiracy is barred by the intracorporate conspiracy doctrine. I therefore recommend the District Court grant Defendants' Motion and dismiss this Count.

### 5.     Count V – *Monell* Liability against the Board

Next, Moles brings a *Monell* claim against the Board, alleging that the Board "maintained policies, customs, or practices that allowed unconstitutional conduct to occur unchecked [and]

. . . failed to train, supervise, or discipline its members and administrators" which "directly caused the violations of Plaintiff's constitutional rights." (ECF Doc. 12, Am. Compl. ¶¶ 31-33).

As the Board points out, *Monell* does not create a separate cause of action; it creates a structure to impose liability on a municipal body for its unconstitutional policies or practices. (ECF Doc. 18, pp. 24-25, citing to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), among others). Even so, however, the Board argues that Moles has not alleged sufficient facts to establish the potential for *Monell* liability later in the case. (ECF Doc. 18, p. 25, quoting *Nichols v. Wayne Cnty.*, 82 F. App'x 445, 451 (6th Cir. 2020)). In the Board's view, Moles' Amended Complaint does not allege specific facts to impose *Monell* liability on it; the facts alleged are broad and conclusory and thus this claim cannot survive. (ECF Doc. 18, pp. 26-27).

*Monell* does not create a separate cause of action under Section 1983. *E.g.*, *Hicks v. City of Akron, Ohio*, No. 5:23-CV-1, 2024 WL 732330, at *12 (N.D. Ohio Feb. 22, 2024); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Rather, *Monell* removed municipalities' complete immunity and established a framework for imposing liability where a municipality caused constitutional deprivations through its policies or customs. *Monell*, 436 U.S. at 701. *Monell* also clarified that a local government is not automatically liable for the actions of its employees under a *respondeat superior* theory of liability – for a municipality to be liable for employee actions, those actions must be directly tied to a municipal policy or custom. *Id.* at 694. In other words, the policy must be the "moving force" behind the constitutional violation, and not attributable solely to the actions of the municipality's employees or agents. *Id.*

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused" them to suffer a constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011), quoting *Monell*, 436 U.S. at 691,

22

694. To succeed, the plaintiff "must identify the policy, connect the policy to the [Board] itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). Official policy includes lawmakers' decisions, policy-makers' acts, and "practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

I agree here with the Board's arguments. First, *Monell* does not impose a separate cause of action, and thus, Count V is not a proper claim on its own. But even presuming *Monell* liability might later attach to the Board, Moles has not provided factual support for her theory. The Amended Complaint recites bare legal conclusions to support Count V regarding *Monell* liability. (*See* ECF Doc. 12, Am. Compl., ¶¶ 31-33). The Court need not accept a legal conclusion as fact, and does not give them credence here. *See Jackson*, 864 F.3d at 466; *see also Twombly*, 550 U.S. at 555-56. Even looking elsewhere in the Amended Complaint, the only policy attributable to the Board is one that imposed a background check requirement on adults chaperoning school functions. (ECF Doc. 12, Am. Compl., ¶¶ 13d, g). It belies common sense that *Monell* liability should attach to the Board because of a policy requiring background checks for adults supervising minors.

Furthermore, additional factual development will not bolster Moles' theory. As provided above, Moles' constitutional claims fail. And the Board has no liability where there is no constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation."). Therefore, I again recommend the District Court grant Defendants' Motion and Count V be dismissed.

### B.       Group Pleadings fail against the Individual Defendants

The Individual Defendants next argue that Moles has not identified the specific conduct of any one of them, but makes allegations against "Defendants" generally. (ECF Doc. 18, pp. 13-15). Such "group pleadings" fall short of the Sixth Circuit's requirement that "'claims against governmental officials must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional rights.'" (*Id.* at p. 18, quoting *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (emphasis in original) (collecting cases)). The Individual Defendants argue that, by lumping them together collectively, Moles has not shown that any individual defendant, "through their own individual actions, engaged in any unconstitutional conduct sufficient to state a claim under 42 U.S.C. § 1983." (ECF Doc. 18, p. 15). As the Individual Defendants point out, all factual allegations in the Amended Complaint are "purportedly the result of 'Defendants' conduct." (ECF Doc. 26, p. 6, quoting Am. Compl. ¶¶ 13b-f).

Moles disagrees that she has not sufficiently identified any individual Defendant's conduct. (ECF Doc. 24, pp. 2-3). She states that, as according to Rule 8, she "amply provides" fair notice. (*Id.* at p. 2). She then lists, in her opposition brief, the conduct alleged against Superintendent Angela Smith; Principal Jack Whaley; Board Members Douglas, Hayes, Horvath, Thompson, and Sency; and the Board collectively. (*Id.* at pp. 2-3).

Federal Rule of Civil Procedure 8(a) requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," to give the defendants "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotations and marks omitted). The complaint may group defendants together as long as it notices them of the claims against them and the factual basis. *Gold Crest, LLC v. Project Light,*

*LLC*, 525 F. Supp. 3d 826, 835 (N.D. Ohio 2021). In certain cases, grouping defendants together in the pleading stage is permitted and is not a basis for dismissal. *See Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 893-94 (N.D. Ohio 2025), quoting *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019).

However, whether group pleading of defendants violates Rule 8(a)'s notice pleading requirements depends on the facts and claims at issue. *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 934 (S.D. Ohio 2023) (collecting cases). In the context of a Section 1983 action against defendants in their individual capacity, as here, a plaintiff "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Ondo v. City of Cleveland*, 795 F.3d 597, 610 (6th Cir. 2015) (internal quotations and marks omitted) (emphasis in original). This is because "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Thus, a complaint fails the notice pleading standard for group pleading if it does not identify an individual defendant by name, or if it otherwise vaguely lumps multiple defendants together with conclusory allegations or without sufficiently demonstrating their personal involvement in the alleged unconstitutional action. *Garrett v. Morgan Cnty. Sheriff's Off.*, 792 F. Supp. 3d 771, 805-07 (N.D. Ohio 2025). Courts within the Sixth Circuit, including this District, will generally hold that group pleading in a Section 1983 action fails for want of specific factual allegations of an individual defendant's personal involvement in the unconstitutional action. *Id.* at 808 (collecting cases); *see also Marcilis*, 693 F.3d at  596 (affirming district court's dismissal of individual capacity claims against two defendants where the complaint identified them by name only as governmental entity employees and later made "only categorical references to 'Defendants' "); *Garton v. Crouch*, No.

3:21-CV-00338, 2022 WL 275519, *9 (M.D. Tenn. Jan. 28, 2022) ("The group pleading and conclusory assertions are not sufficient to state a colorable claim of any kind."); *Kurek v. Ohio Dep't of Dev. Disabilities*, No. 3:16CV623, 2017 WL 1555930, at *6 (N.D. Ohio Jan. 20, 2017) ("conclusory allegations of collective, unspecified, and undifferentiated wrongdoing is not sufficient . . . [and] fails to satisfy the *Iqbal/Twombly* standard.") (collecting cases); *contra Buehner*, 788 F. Supp. at 893-94 (group pleading survived motion to dismiss where the complaint identified two partner officers who jointly acted as lead detectives and conducted investigation together).

Moles is generally correct that she need not specifically state an individual defendant's name in order to satisfy Rule 8's notice requirement to show a defendant's personal involvement. (ECF Doc. 24, p. 3). Particularized allegations allowing an inference to determine which defendant acted, alone or together, may suffice to meet notice pleading standards. *See Buehner*, 788 F. Supp. at 893-94.

But that is not what Moles has done here, and her more specific statements in her opposition brief do not save the Amended Complaint. The Individual Defendants are correct that the Amended Complaint names only that "Defendants" committed certain actions. (*See* ECF Doc. 26, p. 6, quoting Am. Compl. ¶¶ 13b-f). And Moles' argument in her sur-reply that her "Amended Complaint describes specific dates and events and the official capacities through which Defendants jointly acted" is not borne out in that document. (ECF Doc. 27-1, p. 2). The only title used in the Amended Complaint states only that, at a school dance, Moles' daughters were seated at a table with the Vice Superintendent – who is not a defendant in this action. (ECF Doc. 12, Am. Compl., ¶ 13d). Neither does the Amended Complaint give specific dates or specific occurrences that would lead to an inference of individual conduct. (*See generally* Am.

Compl.). Rather, any date given is just to the year, and occurrences are limited to generalized statements of conduct at a board meeting, school dance, public records request, or the like. It is possible that these vague, conclusory references might later lead to a specific occurrence of alleged unconstitutional conduct. However, Moles provides no specificity in the Amended Complaint that could lead this Court to an inference of alleged conduct by any singular Defendant, or of the type of specified collective conduct that would place those Defendants on notice of the alleged unconstitutional action.

Group pleading of the individual Defendants thus fails to provide them sufficient notice of the alleged conduct supporting Moles' Section 1983 claims. I therefore recommend the motion for judgment on the pleadings be granted as to all individual Defendants, namely, Superintendent Angela Smith; Principal Jack Whaley; and Board Members Douglas, Hayes, Horvath, Thompson, and Sency, and Moles' case against them be dismissed.

### C.   Qualified Immunity bars suit against the Individual Defendants[2]

The Individual Defendants raise qualified immunity as a defense, arguing that Moles has not alleged facts in her Amended Complaint to show that they violated a clearly established statutory or constitutional right. (ECF Doc. 18, pp. 15-17). They argue that dismissal on qualified immunity grounds at the pleadings stage is proper, because the failure to allege specific facts against any individual defendant cannot demonstrate personal misconduct. (*Id.* at pp. 16-17). As such, no Individual Defendant could have clearly known that they could be held individually liable for an alleged constitutional violation based on their official capacities. (*Id.* at p. 17). Moles responds only that qualified immunity shields officials only when their conduct does not

---

[2] Moles correctly states that qualified immunity protects only the Individual Defendants and does not protect the Board. (ECF Doc. 27-1, p. 2, citing *Owen v. City of Indep.*, 445 U.S. 622 (1980). Only the Individual Defendants raise this defense. (*See* ECF Doc. 18, pp. 15-17, with the heading "All Individually Named Defendants are Entitled to Qualified Immunity from Plaintiff's Causes of Action Brought Under 42 U.S.C. § 1983.").

violate a constitutional right, and that dismissal on qualified immunity grounds is "rarely appropriate on the pleadings." (ECF Doc. 24, p. 3, citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) *and Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021)).

Qualified immunity protects government officials from civil liability when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Accordingly, a government official's personal liability for an official action "generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *see also See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007) (same).

Because qualified immunity is not merely a defense to liability but rather immunity to suit, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), once qualified immunity is raised, a plaintiff bears the burden to demonstrate that the defendant is not entitled to immunity. *Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 314 (6th Cir. 2018). Thus, "at the pleading stage, the plaintiff must state facts making out a plausible claim that the defendant's conduct violated a constitutional right that was clearly established at the time of the violation." *Id.* (internal quotations and marks omitted). Moreover, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) quoting *Anderson*, 483 U.S. at 640.

28

This means that the "clearly established" right must be so apparent that a reasonable official would readily understand the unlawfulness of their alleged action. *Anderson*, 483 U.S. at 640.

A plaintiff must therefore allege facts to show (1) the government officials, acting under color of state law, violated their constitutional right; and (2) the constitutional right was "clearly established" at the time of the alleged violation, such that reasonable official would have known that their conduct was unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). When deciding on qualified immunity grounds, this Court considers whether precedent "place[s] the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This is so "liability attaches only to 'the plainly incompetent or those who knowingly violate the law.'" *Hall v. Navarre*, 118 F.4th 748, 759 (6th Cir. 2024), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Sixth Circuit has recognized that Rule 8's basic pleading standards may be incongruous with affirmative defenses, including qualified immunity. *Tilley*, 15 F.4th at 763. And, as I explain later, some affirmative defenses may be inappropriate to dismiss at the pleadings stage. *See Jones v. Bock*, 549 U.S. 199, 212 (2007). But, to survive qualified immunity, a right must be "clearly established" – and thus, an inartful pleading may yet lead to dismissal on this prong. *Tilley*, 15 F.4th at 763. This is consistent with the Supreme Court's "longstanding principle that clearly established law should not be defined at a high level of generality." *White*, 580 U.S. at 79 (internal quotations and marks omitted). Overcoming qualified immunity does not require a plaintiff have a "case directly on point," *al-Kidd*, 563 U.S. at 741, but it is nonetheless a "demanding standard" that "requires a high degree of specificity." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotations and marks omitted). Thus, a

plaintiff may not circumvent qualified immunity by alleging a violation of rights in the abstract. *Tilley*, 15 F.4th at 765-66; *see also Anderson*, 483 U.S. at 640.

And my review of Moles' Amended Complaint reveals just this problem. Although Moles alleges that her equal protection and procedural due process rights were violated, and that she was retaliated against because of her exercise of First Amendment protected speech, these allegations are only in the abstract.

### 1.      Count I – First Amendment Retaliation

As for the First Amendment retaliation claim underpinning the other two, Moles must show three things: (1) that the First Amendment protected her speech and her public records requests; (2) that an Individual Defendant took an adverse action against her; and (3) that there was a causal connection between her protected activity and the adverse actions of the Individual Defendants. *Hall*, 118 F.4th at 759.

In her Amended Complaint, Moles stated she was "systematically targeted after raising questions about transparency, equity, and school governance." (ECF Doc. 12, Am. Compl. p. 1). She alleges that she attended school board meetings from 2021 through 2023 and was engaged in PAK activities. (*Id.* ¶ 8). She alleges that she "voiced concerns regarding district transparency, administrative accountability, and student welfare" during public board meetings and via email correspondence. (*Id.* ¶ 9). She also submitted public records requests addressing "board policy, financial oversight, and school practices[.]" (*Id.* ¶ 10). She alleges that "Defendants"[3] excluded her from the PAK group, reported her to police for alleged financial misconduct, selectively denied her public records requests (stating that records did not exist or were barred by a

---

[3] As previously addressed, the Amended Complaint only describes allegations of "Defendants" carrying out retaliatory acts, without any greater specificity.

settlement agreement), and shut off her microphone, left the stage, and summoned police after she "briefly exceeded her speaking time[.]" (*Id.* ¶¶ 13a-c, e).

The First Amendment, applied to the states through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech." U.S. Const.. amend. I, XIV. In the speech context, a plaintiff "cannot defeat qualified immunity simply by arguing that they have a clearly established right not to suffer an 'abridgement' of the 'freedom of speech'" because it does not alert a government official "of the First Amendment's limits in the specific situations that they confronted." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021), quoting U.S. Const.. amend. I.

Free speech protections vary depending on the type of speech and forum where the speech occurs. *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 892 (6th Cir. 2021). Indeed, "free speech" does not protect all speech. *E.g.*, *Schenck v. United States*, 249 U.S. 47, 52 (1919) ("The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic."). And in a limited public forum such as a public school board meeting, government officials may "'regulate'" speech "through 'time, place, or manner' restrictions" as long as those restrictions are unrelated to the content of the speech. *Ison*, 3 F.4th at 893, quoting *McCullen v. Coakley*, 573 U.S. 464, 477 (2014).

And the First Amendment protects a citizen's right to make a public-records request, but it does not compel disclosure of the underlying records. *Spithaler,* 803 F. App'x at 829. Again, "'neither the First Amendment nor the Fourteenth Amendment mandates a right of access to

government information or sources of information within the government's control.'" *Phillips*, 841 F.3d at 418, quoting *Houchins*, 438 U.S. at 14-15.

Finally, regarding the retaliation element, "a plaintiff must prove a causal connection between the protected conduct and the adverse action." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). "Bare allegations of malice do not suffice to establish a constitutional claim." *Id.*, quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (internal marks omitted).

To overcome qualified immunity at this stage, Moles, must still plead her factual allegations with enough particularity to demonstrate to the Individual Defendants that their actions violated Moles' "clearly established" rights at the time those actions were taken. Moles' Amended Complaint again fails to plead with specificity. As for the speech itself, she provides few specifics, except that, for example, she "voiced concerns regarding district transparency, administrative accountability, and student welfare." (*Id.* ¶ 9). Moles also states, without more, that her public records requests raised "matters of public concern" such as "board policy, financial oversight, and school practices." (*Id.* ¶ 10).

Reading her Amended Complaint and her opposition briefing together, it appears that Moles is claiming that the Individual Defendants engaged in impermissible viewpoint discrimination, and further continued abridging her First Amendment rights in retaliation. In her opposition brief, Moles cites *Ison*, 3 F.4th at 984-97 for the proposition that it invalidated "school-board restrictions silencing speakers based on viewpoint." (ECF Doc. 24, p. 3). This correctly states the legal premise provided in *Ison*, but her factual allegations, in the Amended Complaint or otherwise, make no mention of any viewpoint expression underpinning this claim. (*See generally* Am. Compl.; *see also* ECF Doc. 24, p. 3 (naming only a time-limitation

restriction at a public board meeting, and that two public records requests were denied and eleven others resolved by settlement negotiations)). To the contrary, Moles states that she was allowed to speak publicly at Board meetings and correspond privately with the Individual Defendants (presumably in their capacities as public officials), she was an active parent in school activities, she was permitted to chaperone after successfully completing a background check, and she was permitted to speak during a public board meeting for her allotted time. (*See generally* Am. Compl.). My review does not disclose that any actions were taken because of the content of her speech. (*See id; see also* ECF Doc. 24, p. 3). Defendants, in their Amended Answer, admit that Moles attended public Board meetings, and that she submitted formal public records requests in the years alleged. (ECF Doc. 17, Am. Ans., ¶¶ 10-12). Defendants provide additional contextual statements that do not contradict the allegations in Moles' Amended Complaint: the denial of public records requests was based on their legal insufficiency or were otherwise barred by a settlement agreement; that she violated the rules in place for Board meetings; and that revised school policy required her to submit and pay for a background check to chaperone a school dance. (Am. Ans., ¶¶ 18-20). On these allegations of fact, there is no disagreement. (*Compare* Am. Compl. *with* Am. Ans.).

But, as before, Moles has not provided the requisite particularity in her allegations to point out where any Defendant has violated clearly established precedent such that a reasonable official would have known the illegality of their actions. I find myself searching for specifics within Moles' Amended Complaint, and come up wanting. To provide Moles her due as the non-moving pro se plaintiff, and with only the pleadings before me, I consider the question of qualified immunity with as much specificity as I can determine from her Amended Complaint, supported by her briefing. I therefore find that Moles has failed to overcome the "clearly

33

established" prong as to Count I – First Amendment Retaliation. I recommend the District Court grant Defendants' Motion and Count I – First Amendment Retaliation be dismissed on qualified immunity grounds.

### 2. Counts II and III – Equal Protection and Due Process

The next two claims are founded on Moles' allegations regarding her exercise of protected speech. (*See generally* ECF Doc. 12, Am. Compl.). She argues she was not afforded her Fourteenth Amendment right of equal protection when she was cut off from speaking at a public board meeting after she exceeded time limits, and that her public records requests were denied where others were not, thus, she challenges the Individual Defendants' "selective enforcement" of their rules against her as "without rational basis, driven by animus toward [her] viewpoint." (ECF Doc. 24, p. 4). For her procedural due process claim, she also states that actions such as those at the board meeting or accusations of financial misconduct "imposed reputational stigma while altering [her] legal status . . . without notice or a hearing." (*Id.*).

With respect to the equal protection claims, Moles must show that she was intentionally treated differently than others similarly situated without any rational basis for the difference. *E.g.*, *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). With respect to her allegation that she was not permitted to exceed time limits during public board meetings, Moles has not shown either that she was intentionally treated differently, or that there was no rational basis for the difference. The alleged restrictive actions by the Individual Defendants appear to be content-neutral means of placing reasonable restrictions on speech to serve a significant government interest, as an official is permitted to do. *Ison*, 3 F.4th at 895-96 (upholding pre-registration requirement for individuals to speak at school board meetings, because there is a significant government interest in efficiently structuring board meetings to

allow all speakers the chance to have their voices heard, and the restriction was narrowly tailored to serve that interest). As the name suggests, government officials are permitted to restrict the "time" given for a person to exercise their freedom of speech, provided it is content-neutral and is narrowly tailored to serve a government interest – and time restrictions, intended to ensure orderly public meetings so that all attendees may speak, satisfy this standard. *Id.* Likewise, Moles makes no factual allegations that her public records requests lacks a rational basis; she later clarifies in her briefing that eleven were restricted by a prior settlement agreement, and two were denied as legally insufficient or unavailable as requested. (ECF Doc. 12, Am. Compl. ¶ 13c; *see also* ECF Doc. 24, p. 3). Seemingly, Moles' view is that the neutral restrictions Defendants placed on speech generally were pointed only to her, based on animus and without rational basis. However, as before, she fails to allege facts to support her constitutional claims generally, and these claims still cannot survive on qualified immunity grounds, where there is the additional question of whether those rights were "clearly established" in a way that a reasonable official would understand the unlawfulness of their actions. Moles has not alleged sufficient facts for her equal protection claim to survive the qualified immunity analysis.

With respect to her due process claim, Moles must show that she (1) had a life, liberty, or property interest protected by the Due Process Clause; (2) she was deprived of this protected interest; and (3) the Individual Defendants did not afford her adequate procedural rights. *E.g.*, *Daily Servs., LLC v. Valentino,* 756 F.3d 893, 904 (6th Cir. 2014). In the qualified immunity context, this means that "the 'clearly established law' inquiry should ask whether a reasonable

official would understand that the plaintiff was entitled to notice and an opportunity to heard" before the official deprived her of that interest. *Id.* at 903.

But, as explained above, Moles has not alleged facts to show that she had a protected interest in her reputation alone, or that the actions taken against her caused the deprivation of that interest. Her alleged interest in her reputation, standing alone, sounds in tort. *Paul*, 424 U.S. at 712. She does not allege facts to show that she had a constitutionally protectable liberty or property interest; therefore, she has not shown that any Individual Defendant would understand that she was entitled to notice and an opportunity to be heard before causing harm to her reputation by calling the police, whether their reasoning was substantiated or not.

Moles' Amended Complaint fails to allege with particularity how her "clearly established" Fourteenth Amendment rights of equal protection and due process were violated in a way that the Individual Defendants would have clearly understood the unlawfulness of their actions, given the specific situations they confronted. And furthermore, the allegations fail to show that the Individual Defendants acted in a way that was based on animus to Moles specifically, under her 'class of one' theory.

Rather, it appears that the Individual Defendants acted within well-understood constitutional bounds. The Individual Defendants – and the Board – applied reasonable restrictions on certain actions (*e.g.*, time allotted at public meetings, prerequisites for chaperoning school events) and applied them to her as she alleges they did to other adults (her adult daughter or all other parents, depending on the chaperone policy at issue) or other community members (as with the time limits or her public records requests). Her factual allegations do not demonstrate otherwise. And the First Amendment protects Moles' ability to make a public records request, but it does not compel the government to disclose those records.

*Houchins*, 438 U.S. at 14; *see also Spithaler,* 803 F. App'x at 829. Moles therefore does not allege facts to show that the Individual Defendants violated her equal protection or due process rights. I therefore recommend that the District Court grant Defendants' Motion and dismiss Counts II and II on qualified immunity grounds.

### 3.    Counts IV – Civil Rights Conspiracy

For the reasons discussed in Section A, above, Count IV fails as a matter of law. The Civil Rights Conspiracy claim fails based on the intracorporate conspiracy doctrine, because all Individual Defendants are members or employees of the same school board. Therefore, even presuming these claims would survive the motion for judgment on the pleadings, qualified immunity would still protect the Individual Defendants from suit, because Moles has not shown that any Individual Defendant acted outside of "clearly established" law. Indeed, she has not shown, nor could she, that any individual defendant acted at all – because again, all actions are deemed made by the same legal entity.

Although dismissal on qualified immunity grounds may be premature in some instances, that is not the case here. One of the goals of qualified immunity is not only to help defendants avoid unnecessary trials but also to allow defendants to avoid pre-trial discovery where the lawsuit is "insubstantial." *Harlow*, 457 U.S. at 808. And a motion for judgment on the pleadings provides a mechanism for defendants to avoid pre-trial discovery. *See Crawford*, 15 F.4th at 763-64, quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996). The Supreme Court has explained that the "driving force behind . . . qualified-immunity principles" is that "insubstantial claims against government officials be resolved prior to discovery . . . if possible." *Anderson*, 483 U.S. at 640 n.2. Therefore, dismissal on qualified immunity grounds remains proper, even at the pleadings stage. *Rondigo, L.L.C.*, 641 F.3d at 684 (reversing and remanding district court's

37

denial because plaintiffs' claims were "ripe for dismissal under the doctrine of qualified immunity at the earliest possible stage in the litigation.").

I therefore recommend the District Court grant their Motion and dismiss Counts I-IV against the Individual Defendants.

### D.       Statute of Limitations

Defendants also assert that any of Moles' claims alleging conduct prior to May 15, 2023 are barred by the two-year statute of limitations that applies to Section 1983 claims. (ECF Doc. 18, pp. 11-13). Defendants argue that, whether counting by the "occurrence rule" or the "discovery rule," any claim alleged to have occurred before May 15, 2023 is time-barred. (*Id.*, quoting *Norman v. Cincinnati*, 2025 WL 815724, *7 (S.D. Ohio Mar. 13, 2025)). Defendants state that the Sixth Circuit does not apply the "continuing violation" principle in Section 1983 claims, thus, any discrete alleged action barred by the statute of limitations remains barred, even if related to acts not time-barred. (ECF Doc. 18, p. 20, n.1, quoting *Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534, 539 (6th Cir. 2003)).

In response, Moles asserts that her Amended Complaint "alleges both discrete acts (*e.g.* the 2022 police intervention at a board meeting and exclusion from PAK leadership) and ongoing retaliatory practices (improper denials of records requests in 2024-25 and retroactive policy changes)." (ECF Doc. 24, p. 2, citing *Kuhnle Bros., Inc. v. Geauga Cnty.*, 103 F.3d 516, 522 (6th Cir. 1997)). Thus, her allegations contain both fresh, repeated First Amendment injuries and an ongoing course of retaliation by Defendants, rendering all of Moles' constitutional claims timely. (ECF Doc. 24, p. 2). In any event, should acts from 2022 and 2023 be considered untimely, Moles argues they remain admissible as background evidence of motive and pattern.

(*Id.*; ECF Doc. 27-1, p. 2, citing to *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Section 1983 does not itself provide a statute of limitations; federal courts must borrow from applicable state statutes governing personal injury actions in the state in which the Section 1983 action was brought. *Owens v. Okure*, 488 U.S. 235 (1989); *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). In Ohio, the Sixth Circuit has identified Ohio Revised Code § 2305.10 as the applicable statute, conferring a two-year statute of limitations on Section 1983 claims brought in federal courts here. *Banks v. City of Whitehall*, 344 F.3d 550, 554 (6th Cir. 2003); *see also Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997) (rejecting application of O.R.C. § 2305.09(D)'s four-year statute of limitations and reaffirming application of a two-year statute of limitations in Section 1983 actions in federal district courts in Ohio).

"The date on which the two-year statute of limitations begins to run in a § 1983 action is a question of federal law." *Kuhnle Bros., Inc.*, 103 F.3d at 520. The Sixth Circuit has suggested that the "discovery rule" applies, *i.e.*, "when the plaintiff knows or has reason to know" of the injury forming the basis of their action. *Id.* (internal quotations and marks omitted); *see also Reguli v. Russ*, 109 F.4th 874, 879-80 (6th Cir. 2024). The "discovery rule" applied in the Sixth Circuit "postpones the limitations period to the date that the plaintiff discovered, or reasonably should have discovered, basic facts about the claim." *Reguli*, 109 F.4th at 879-80. And "the discovery rule begins once a plaintiff learns of *an* injury from the defendant's conduct—even if the plaintiff does not discover the '*full extent* of the injury' until later." *Id.*, quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). Conversely, the Supreme Court has applied the "occurrence rule" in Section 1983 statute-of-limitations determinations. *Reguli*, 109 F.4th at 883 (comparing approaches to determining the running of the statute of limitations in

Section 1983 cases). This approach "starts the limitations period when the plaintiff has 'a complete and present cause of action'" *i.e.*, the limitations period is triggered "on the first day that every element of a claim has occurred such that the plaintiff may sue in court over the claim." *Id.* at 879, quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997).

When considering whether the injuries form a "continuing violation" for purposes of surviving the statute of limitations, the injury must be of the type that inflicts "continuing and accumulating harm." *Id.*, quoting *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968). And "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999), quoting *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991). The Sixth Circuit has adopted the following three-part test to determine whether a continuing violation exists: first, the defendant's wrongful conduct must continue after the precipitating event that began the pattern; second, injury to the plaintiff must continue to accrue after that event; third, further injury to the plaintiff could have been avoided if the defendant had at any time ceased their wrongful conduct. *Tolbert*, 172 F.3d 934, 940 (6th Cir. 1999).

Notwithstanding the above, the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and a plaintiff need not plead the lack of affirmative defenses to state a valid claim. *Jones v. Bock,* 549 U.S. 199, 216 (2007); *see also* Fed. R. Civ. P. 8(a). As such, dismissal at the pleadings stage is generally inappropriate for dismissing a claim based on the statute of limitations. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (motions under Rule 12(b)(6) are generally an inappropriate vehicle for dismissing based on a statute of limitations defense); *Bruce v. City of Miamisburg*, No. 3:21-CV-00080, 2021 WL 4479506, at *4 (S.D.

40

Ohio Sept. 30, 2021) (applying same to a Rule 12(c) motion in Section 1983 action). But where the allegations in the complaint affirmatively show that the claim is time-barred, dismissal on the pleadings may be appropriate. *See Jones,* 549 U.S. at 215 ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"). Thus, whether dismissal is appropriate "depends on whether the allegations in the complaint suffice to establish that ground" concretely, *id.*, or whether further factual development is warranted. *Bruce*, No. 3:21-CV-00080, 2021 WL 4479506, at *4.

For the reasons given in more detail in the previous sections, Moles' Amended Complaint does not provide sufficient factual allegations to support – or in this case, dismiss – her claims. Whether applying the discovery rule or the occurrence rule, or whether the alleged conduct results in a continuing violation, all require a more fact-specific inquiry than is available on the face of the pleadings. Certain claims are undated, and the remaining reference only the years in which they occurred. (*See* ECF Doc. 12, Am. Compl., ¶¶ 13(a)-(g)). Defendants' Answer and Affirmative Defenses does little to clarify these dates or when the claims may have been discovered and/or accrued. (*See generally* ECF Doc. 14, Am. Ans.). Based only on the dates asserted, it appears that the only claim that might survive the statute of limitations are the public records requests placed in 2024 and 2025. However, Defendants assert that a settlement agreement dated June 14, 2023, bars Moles' claims. (*Id.* at p. 9, ¶ 15). These factors obscure the determination of the statute of limitations, and thus, at this stage, does not appear to be the appropriate course for dismissal. *See Jones,* 549 U.S. at 215.

This is not to say that Defendants' statute of limitations defense will not later win the day, should the District Court disagree with the other portions of this Report and Recommendation and permit Moles to survive the motion for judgment on the pleadings. But,

the Court has little before it. Should any claim be dismissed on statute of limitations grounds, additional factual development is needed to make that determination.

I therefore recommend in the alternative, should the District Court disagree with the recommendation of dismissal, that Defendants' dismissal on statute of limitations grounds be denied.

## VI.     Further Amendments Will Not Lead to Meritorious Constitutional Claims

Moles now argues in her sur-reply in opposition to Defendants' Motion for Judgment on the Pleadings that dismissal with prejudice is unfounded and she should be permitted to clarify her factual allegations through amendment. (ECF Doc. 27-1, p. 3). She now requests, without formal motion, that she should be granted leave to amend as an alternative to dismissal. (*Id.*).

As Rule 8(e) instructs, I must construe the pleadings to do justice. And Moles receives the benefit of construction in her favor, both as a pro se plaintiff and as the non-moving party. *See, e.g.*, *El Bey*, 500 F.3d at 413. But even though Rule 8 is not "hypertechnical" in its pleading requirements, it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. A complaint does not meet this standard "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678, quoting *Twombly*, 550 U.S. at 557. And, "at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,'" but "it is still necessary to include some 'well-pleaded factual allegations' to support the claim. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011), quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) *and Iqbal*, 556 U.S. at 679.

Generally, "if it is at all possible" that a plaintiff "can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brown*, 415 F. App'x at

614 (internal quotations and marks omitted). This is particularly preferable "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Id.* at 614-15 (internal quotations and marks omitted). Courts also consider whether a pro se plaintiff is aware of the applicable rules of amendment, and whether it is amendment of an initial complaint. *See Gordon v. England*, 354 F. App'x 975, 981 (6th Cir. 2009) (remanding to the district court to allow pro se plaintiff opportunity to amend her initial complaint where she may not have been aware of the requirements under Fed. R. Civ. P. 15). Even so, granting leave to amend is not required in every case. *Id.* at 981-82. Dismissal with prejudice is permitted if a court "determines that the pleading could not possibly be cured by the allegation of other facts." *Brown*, 415 F. App'x at 615.

Here, even though she is proceeding pro se, Moles has shown she is aware of Civil Rule 15 and the possibility to amend her complaint. She has previously used that rule to amend her initial complaint to add additional parties and claims. (*Compare* ECF Doc. 1 and attachments *with* ECF Doc. 12). Even so, she has not moved for leave to amend, but instead expressed in her sur-reply that she should be granted leave to amend as an alternative to dismissal with prejudice. (ECF Doc. 27-1, p. 3). Moles has shown in her filings thus far that she has a sufficient understanding of the civil rules to advance her case. (*See generally* Docket). Therefore, granting further leave to amend is not counseled on this basis.

And even though Moles receives the doubled benefit of construction in her favor as a pro se plaintiff, and even though she has amended her initial complaint, the factual underpinnings of alleged wrongdoing remain unclear. I cannot ascertain how Moles' generalized allegations show unconstitutional, coordinated conduct by Defendants, either individually or as the Board. The thrust of Moles' claims is that Defendants are discriminating against her because of her exercise

43

of First Amendment protected speech. (*see generally* ECF Doc. 12, Am. Compl.). It thus appears that Count I is the claim from which all other claims flow. (*Id.*). Still, Moles has not alleged any facts to show the viewpoint she expressed, that she was deprived of the ability to exercise her constitutional rights, or that any defendant acted based on discriminatory intent or animus. (*Id.*). Rather, all factual allegations of wrongdoing appear to be based in neutral, permissible actions by Defendants.

I wish to make clear: my recommendation of dismissal with prejudice is not based on inartful pleadings. Throughout this Report and Recommendation, I have endeavored to provide Moles her due deference as the pro se plaintiff. With each claim, I have considered whether, through thoughtful case management procedures and court oversight in discovery proceedings, Moles might uncover factual support for her current allegations. At any rate, my detailed review of the claims in the Amended Complaint, coupled with consideration of Moles' briefings in the case do not reveal claims that rise to the level of a constitutional violation. With this in mind, it does not appear that further facts will arise to support any Section 1983 claim against Defendants.

I therefore recommend the case be dismissed, with prejudice, and without leave to amend.

## VII.    Conclusion

Having reviewed Moles' Amended Complaint, I conclude that she has failed to plead sufficient facts to support her claims, and further factual development through amendment would be futile. I therefore recommend that Counts I – IV be dismissed with prejudice for failure to state a claim on which relief can be granted. Count V states a theory of liability and thereby states no claims. I therefore recommend Count V also be dismissed with prejudice. I further

recommend that, because the doctrine of qualified immunity protects the Individual Defendants from suit, Counts I – IV be dismissed with prejudice.

However, should the District Court disagree that Moles' case be dismissed, I find there are insufficient facts at the pleadings stage to clearly demonstrate whether the statute of limitations applies. I therefore recommend in the alternative that the District Court deny Defendants' motion with respect to their statute of limitations defense.

Dated: December 18, 2025

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

***

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report

and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019).